HUSTON TP. POOR D. v. BENEZETTE TP. POOR D.

$$\frac{135 \quad 393}{20 \ SC \ {}^{3}274}$$

APPEAL BY DEFENDANT FROM THE COURT OF QUARTER SES-
SIONS OF ELK COUNTY.

Argued May 8, 1890—Decided May 26, 1890.
[To be reported.]

1. The rule of practice, under the act of March 16, 1868, P. L. 46, regulat-
ing appeals from orders for the removal of paupers, is that all disputed
questions of fact or law, to be presented for review to the Supreme Court,
must be raised upon the record upon points submitted at the hearing and
argument in the Court of Quarter Sessions.
2. A general exception to the opinion and decree finding the facts and ap-
plying the law thereto, is not sufficient to enable the Supreme Court to
review the case on its merits ; but, where the omission to submit a point
is supplied by the specific statement of the disputed question in the body
of an exception, filed with the opinion, the record is then sufficient to
present that question.
3. A township-road tax is a public tax within the meaning of § 9, act of
June 13. 1836, P. L. 542, providing that a settlement may be gained in
any poor district by any person who shall come to inhabit in the same,
and " shall be charged with and pay his proportion of any public taxes
or levies for two years successively."

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS and
MITCHELL, JJ.

No. 311 January Term 1890, Sup. Ct. ; court below, No. 3
May Term 1889, Q. S.

On April 25, 1889, the overseers of the poor of Huston town-
ship, Clearfield county, entered in the court below an appeal
from an order made by two justices of the peace directing the
removal of Nathaniel Harriger, his wife and daughter, from
Benezette township, Elk county, to Huston township, Clear-
field county.

The case was heard by the court upon depositions taken, the
testimony tending to show that Nathaniel Harriger and his
family had become a charge upon the poor district of Benezette
township, in which they had no legal settlement, and that prior
thereto they had resided in Huston township, and Nathaniel
Harriger had paid a road tax therein for the years 1884 and 1885.

Opinion of Court below.

After argument, the court, MAYER, P. J., entered a decree discharging the order of removal at the cost of the poor district of Benezette township, filing the following opinion:

Nathaniel Harriger, wife and step-daughter became a charge upon the poor district of Benezette township, Elk county, and were removed to the poor district of Huston township, Clearfield county, upon the allegation that the latter district was the place of legal settlement of said pauper. The overseers of the poor of Huston township have appealed from the order of removal, and it is for the court to determine whether said removal was right and should be sustained.

The poor district of Benezette township claims that the place of legal settlement of Harriger and family was in Huston township, by reason of the payment of road taxes for two consecutive years, and that this would give them a settlement under the ninth section of the act of June 13, 1836, which provides that a settlement may be gained in any district, "by any such person who shall be charged with, and pay his proportion of any public taxes or levies for two years successively." The evidence taken on the part of Benezette township shows that Harriger paid road tax in Huston township for the years 1884 and 1885. Is the payment of road taxes within the meaning and intendment of the act of 1836, and are they such "public rates and levies" as were contemplated by said act?

The words "public rates and levies" have received a judicial construction by the Supreme Court, in the case of Directors of the Poor v. Guardians of the Poor, 5 S. & R. 417. C. J. TILGHMAN, delivering the opinion of the court, says that by two acts for the relief of the poor, one passed in 1717 and the other passed in 1734, a person might gain a settlement by being charged with and paying his share towards the county taxes or levies for the poor; that county taxes, in those two acts, were distinguished from levies for the poor, and the payment of either gained a settlement; that in 1771 an act was passed for the relief of the poor, in which the expression, county taxes, is altered to public taxes. He proceeds to explain the reason of this alteration; that in the years 1717 and 1734, there was no provincial tax, and therefore a settlement was gained by payment of county tax; that in 1771 there was a provincial tax, and that the legislature used the word public, instead of county

Arguments.

meaning to comprehend in that expression both provincial and county taxes. The same expression is used in the act of 1836, "public taxes or levies," which means state, instead of provincial, or county taxes.

We are, therefore, of the opinion that a settlement cannot be gained by the payment of a road tax, but it must be either a state or county tax. The paupers were improperly removed to Huston township, and the order of removal must be discharged, at the cost and expense of the poor district of Benezette township; exception.

—Thereupon the poor district of Benezette township filed the following exception:

"Now, November 5, 1889, the overseers of the poor district of Benezette except to the decision of the court, that the payment of a road tax for two successive years is not sufficient to give a pauper a settlement, but that it must be a state or county tax."

The poor district of Benezette township then took this appeal, specifying that the court erred:

1. In deciding that a settlement could not be gained by the payment of a road tax for two successive years.

*Mr. Harry Alvan Hall*, for the appellant:

1. A person charged with and paying "his proportion of any public taxes or levies for two years successively," in any poor district, gains a settlement thereby: § 9, act of June 13, 1836, P. L. 541. In Directors of Poor v. Guardians of Poor, 5 S. & R. 417, upon which the court below based its decision, the phrase "public tax" was construed only as used in the act of March 9, 1771, 1 Sm. L. 338, and it was not intended to declare its general meaning, for all time to come, as restricted to provincial, or state and county taxes. The effect of the decision of the court below would be that one residing in a county which of itself was a poor district, might gain a settlement by the payment of a poor tax, because it is levied by the county; whereas, one might live in an adjoining county, where the townships constitute poor districts, and pay poor taxes for a lifetime, without acquiring a settlement thereby.

2. The statutory provision should be considered in the light of its reason and purpose. The reason for it is because the payment of taxes furnishes indisputable proof of actual resi-

Arguments.

dence, just as the leasing of real estate, or an indenture to serve, does. And is not this shown by the payment of a township tax, as well as by payment of a county tax? Is it reasonable to say that one actually residing in a township, and contributing to its poor rates his proportion thereof, shall not be entitled to relief from the fund he has helped to create? It seems to us that the very reason given by Mr. Chief Justice TILGHMAN, in the case cited, for the introduction of the word public into the act of 1771, is in harmony with our theory. It was undoubtedly the intention of the act of 1836 to embrace more than state and county taxes. In the case at bar, the settlement is sought to be established by the payment of a road tax, but the principle is the same as if it were a poor tax.

, *Mr. C. H. McCauley* (with him *Mr. F. H. Ely*), for the appellee:

1. This appeal should be quashed. To render the decrees of the Courts of Quarter Sessions, in such cases, reviewable, it is necessary that upon the hearing exceptions to their decisions upon points of evidence or of law shall be noted and filed of record: Act of March 24, 1868, P. L. 46. There was in this case no exception made or point presented to the court at the hearing or argument, and none was noted by the court and filed of record. The only exception is to the opinion of the court, and upon it no bill was sealed. The Supreme Court has no jurisdiction to review such an exception as this to the opinion of the court below: Lower Augusta v. Selinsgrove, 64 Pa. 166; Overseers of Parker Tp. v. Overseers of East Franklin Tp., 13 W. N. 141; Overseers of Elk Tp. v. Overseers of Beaver Tp., 18 W. N. 438.

2. To gain a settlement there must be a strict compliance with all the requirements of the statute: Beaver Tp. Poor D. v. Rose Tp. Poor D., 98 Pa. 636. The act of 1717, 1 Weiss & Miller's L. 72, and that of 1734, Idem 138, provided that a settlement might be gained by the payment of "county taxes or levies for the poor." By § 17, act of March 9, 1771, 1 Sm. L. 338, the expression was altered to "public taxes or levies for the poor," so as to comprehend provincial taxes, which had been imposed in the meantime, as well as county taxes: Directors of Poor v. Guardians of Poor, 5 S. & R. 417. The language of clause II., § 9, act of June 13, 1836, P. L. 543, is,

Opinion of the Court.

"any public taxes or levies for two years successively," designedly omitting the words "for the poor." The judicial construction of the words "public taxes," as meaning state and county taxes, in the case last cited, must be applied to them in the act of 1836.

3. Again, if the construction of the act of 1836, contended for by the appellant, is to be adopted, the word "public," might as well have been omitted entirely. But that word has a well defined meaning, viz., concerning the whole body politic, or all the citizens of the state: 2 Bouv. Law D., 484; 1 Greenl. Ev., § 188. State and county taxes are a burden on each and every individual in the state, and are annual throughout the state; while road and poor taxes are local in their nature, and the subjects of taxation upon which they are assessed are more restricted. The office of the word "any" is simply to preclude all question as to what public taxes, state or county, must be paid. But the four acts referred to are in pari materia and must be construed together: Keeling's Road, 59 Pa. 358. Neither the letter nor the spirit of the act of 1836 includes township rates and levies.

OPINION, MR. JUSTICE CLARK:

In this case an exception was taken, and was noted by the judge and filed with his opinion, to a specific point of law set forth in the exception, with like effect as if at the hearing and argument a formal point had been submitted and answered, and an exception noted and filed of record, as required by the act of 1868. There is no question made as to the competency of the witnesses, the relevancy of the evidence, or as to the facts; the whole case rests upon the point of law set forth in the exception noted by the judge. The rule of practice under the act of 1868 is that all disputed questions of fact or law must be raised upon the record, upon points submitted at the hearing and argument of the case, and, that a general exception to the opinion and decree of the court, in which the facts are found and the law applied thereto, is not sufficient to enable us to review the case upon the merits. Here, however, the submission of a point is supplied by the specific statement of the disputed question in the body of the exception, and we think the record may be considered as in proper shape to present that question for our determination.

Opinion of the Court.

It was found by the court and it is assumed in the exception noted, that Nathaniel Harriger had paid a road tax in Huston township for two successive years, 1884 and 1885; but the court held that road taxes were not "public taxes," within the meaning of the act of 1836; that state and county taxes can only be considered; and that, therefore, the payment of road taxes in Huston township for two years, successively, was not sufficient to give Harriger, his wife and daughter, a legal settlement there. We are called upon, therefore, to determine what is and what is not a "public tax," within the meaning of the act of 1836.

The word "public" is a convertible term, and when used in an act of assembly may refer to the whole body politic; that is to say, to all the inhabitants of the state, or to the inhabitants of a particular place only; it may be properly applied to the affairs of the state or of a county or of a community. The state-house, the county court-house, and the ward schoolhouse are alike public property; the governor, the sheriff, and the constable are all public officers, and the state, county, and township taxes are public taxes. In a general sense, all taxes are state taxes, for they are all assessed and levied under the general laws of the state; and counties, cities, boroughs, and townships are but subordinate divisions or departments ancillary to the general government of the state. The word public, in its most comprehensive sense, is the opposite of private; and, as city, borough, and township taxes, whether road, school, or poor, are certainly not imposed for any merely private purpose, they must certainly be considered public taxes.

Under the early acts of 1717: Hall & S. Laws, 96, and 1734; Idem 181, a settlement was gained by any person who was charged with and had paid his or her share towards " the county taxes or levies for the poor " for two years, successively; but in the act of 1771, 1 Sm. L. 338, the expression " county taxes " was changed to " public taxes." A question afterwards arose in Directors of the Poor v. Guardians of the Poor, 5 S. & R. 417, whether a county tax was a public tax, within the meaning of the act of 1771; and it was decided that a legal settlement might be gained under the act of 1771 by payment of a county tax only. In stating the probable reason for changing " county " to " public," Chief Justice TILGHMAN said that in the years 1717 and 1734, when the first two acts were passed, there

was no provincial tax, and therefore a settlement was gained by payment of a county tax; but in 1771 there was a provincial tax, and it was therefore right that a settlement should be gained by paying either a provincial or a county tax; and the legislature used the word "public" instead of "county," meaning to comprehend in that expression both provincial and county taxes. The only point decided was that a county tax was a public tax. We do not understand the learned chief justice to say that this was the full extent to which the rule of construction would apply: he simply decided the case before him; the language employed by him in his opinion in terms covered that ground, and no more. But, if a tax can only be considered a public tax when it is imposed throughout the whole state, as the appellee appears to contend, how could a county tax have been so considered? and if, as that case explicity decides, a county tax is a public tax, then upon what system of argumentation shall it be maintained that a township tax is not also a public tax?

A settlement under the poor laws is a residence of such permanent and continuous character as, under certain circumstances, will entitle a person to support or assistance as a pauper. When not derived by birth or marriage, or from the relation of parent and child, when it is gained through the residence of others, it is acquired generally upon the basis of a settled personal residence, the permanency of which must be shown in a certain way, specified by law. This being so, we cannot see why any greater significance attaches to the payment of a county or state tax than to the payment of a poor or road tax, as these are levied upon the general valuation or assessment for county purposes, upon all such subjects as are taxable for the purposes mentioned. The appellee's contention cannot be sustained upon any rule of law or logic, and the decree of the court below must be reversed.

> The decree of the Quarter Sessions is reversed, and the order of removal confirmed; and it is ordered that the overseers of the poor of Huston township pay to the overseers of the poor of Benezette township such costs and charges as shall be adjudged reasonable and just; and the record is remitted to the Quarter Sessions of Elk county for the due ascertainment thereof.